Robert D. Berger, United States Bankruptcy Judge
In December 2017, debtors/defendants James and Stacy Holmes each borrowed $ 500 from creditor/plaintiff Ameribest Payday Loans. Each loan charged $ 75 in interest over a two-week term. Two weeks later, and periodically thereafter until they filed for bankruptcy, each debtor paid $ 575 to Ameribest and borrowed $ 500 more on the same terms as the previous loan. The last of these transactions occurred on March 24, 2018. As of that date, Debtors had paid a total of $ 1,125 in interest to Ameribest. Debtors filed their *359 joint Chapter 13 petition three days later, scheduling Ameribest as a creditor with an undisputed, unsecured, $ 1,150 claim.
This case is an adversary proceeding brought by Ameribest to determine the dischargeability of the March 24, 2018, loans under §§ 523(a)(2)(A) and (a)(6) of the Bankruptcy Code.[1] Ameribest has moved for summary judgment. For the reasons stated below, Ameribest's motion will be denied. Furthermore, given the facts of this case, Ameribest will be ordered to show cause why this Court should not (1) enter summary judgment in Debtors' favor and (2) award costs and attorney fees to Debtors under § 523(d).
Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden of establishing the nonexistence of a genuine dispute is on the movant. Celotex Corp. v. Catrett , 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court must draw all reasonable inferences from the record in favor of the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
To establish that a debt is nondischargeable under § 523(a)(2)(A), a creditor must prove, by a preponderance of the evidence, that:
(1) the debtor made a false representation;
(2) the debtor made the representation with the intent to deceive the creditor;
(3) the creditor relied on the representation;
(4) the creditor's reliance was reasonable; and
(5) the debtor's misrepresentation caused the creditor to sustain a loss.
In re Young , 91 F.3d 1367, 1373 (10th Cir. 1996) (citing Grogan v. Garner , 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ). Exceptions to discharge are construed narrowly, with doubt resolved in the debtor's favor.[2] See In re Kaspar , 125 F.3d 1358, 1361 (10th Cir. 1997).
Ameribest argues that the three-day gap between the loans at issue and Debtors' Chapter 13 petition necessarily establishes that Debtors misrepresented their intent to repay the loans and, in so doing, intended to deceive Ameribest. However, even assuming that taking out a payday loan can, standing alone, constitute a "representation" for purposes of § 523(a)(2)(A), Debtors have submitted sworn affidavits in which they state that, during the March 24, 2018 transactions, they each "had every intention of paying the loan back in full."[3] Because these statements create a genuine dispute of material fact as to Debtors' intent to repay the loans (i.e., Debtors' intent to deceive Ameribest), *360 Ameribest's motion for summary judgment under § 523(a)(2)(A) will be denied.
More importantly, the record contains no evidence that the transactions at issue caused Ameribest to sustain a loss. Debtors paid $ 1,150 to Ameribest at the same time they borrowed $ 1,000. The net amount owed to Ameribest-$ 1,150-stayed the same.[4] In fact, because the March 24, 2018, transactions included two $ 75 interest payments to Ameribest, Ameribest is $ 150 better off than it would have been had Debtors not engaged in those transactions before filing for bankruptcy three days later.[5] Having apparently sustained no loss, Ameribest cannot meet its burden of proof under § 523(a)(2)(A). Thus, it appears to this Court that Debtors are entitled to summary judgment under that subsection.
As to the rest of Ameribest's complaint, the Court is...puzzled. The Court has previously explained to Ameribest's attorney-in a published case, no less-that § 523(a)(6) does not except debts from a non-hardship Chapter 13 discharge.[6] And Ameribest's remaining "causes of action" serve only to reiterate that Debtors owe Ameribest $ 1,150-the same amount that Debtors listed as undisputed on their Schedule E/F. In short, the Court can identify no reason why it should not enter summary judgment in favor of Debtors as to Ameribest's entire complaint.
For the foregoing reasons, Ameribest's motion for summary judgment is hereby denied. Ameribest is further ordered to show cause, within 30 days of the date of this order, why this Court should not (1) enter summary judgment in Debtors' favor[7] and (2) award costs and attorney fees to Debtors under § 523(d). Debtors may, but are not directed to, file a reply within 20 days of Ameribest's response.
IT IS SO ORDERED.

All statutory references in this order are to Title 11, United States Code ("Bankruptcy Code").

Although there are exceptions to this principle of statutory interpretation, see, e.g. , 4 Richard Levin & Henry J. Sommer, Collier on Bankruptcy ¶ 523.05 (16th ed. 2019) (discussing § 523(a)(5) and the "congressional policy that favors enforcement of obligations for spousal and child support"), those exceptions do not apply to the present case.

Affidavit of James Robert Holmes ¶ 4, ECF 22-1; Affidavit of Stacy Ann Holmes ¶ 4, ECF 22-2.

Under Kansas law governing payday loans, "[a]ny loan made under this section shall not be repaid by proceeds of another loan made under this section by the same lender or related interest." Kan. Stat. Ann. § 16a-2-404(6). To avoid running afoul of this provision that forbids loan rollover, Kansas payday lenders and borrowers engage in a kind of fiction: rather than following a new loan with repayment, the parties follow repayment with a new loan. The first set of transactions is an impermissible rollover of the old loan; the second, apparently permissible, although the net effect on the borrower's financial obligation is precisely the same either way.

As a result of the December 2017 loans, Debtors owed Ameribest $ 1,150. Had Debtors engaged in no other business with Ameribest before filing for bankruptcy, Ameribest would have an unsecured claim for $ 1,150 (plus the contract rate of 3% interest per month from loan maturity through the petition date) and, presumably, that would be that. Instead, between December 2017 and March 24, 2018, each debtor periodically returned to Ameribest to engage in a repayment-followed-by-new-loan transaction, the net effect of which was a $ 75 interest payment to Ameribest. While Ameribest still has an unsecured claim for $ 1,150, Ameribest is better off-by a total of $ 1,125 in interest payments -than it would have been had Debtors simply borrowed money three months before filing for bankruptcy. By arguing that the March 24, 2018, transactions render Debtors' loans nondischargeable because they occurred three days before the filing of the bankruptcy petition, Ameribest is essentially arguing that regular interest payments from an honest debtor can render a payday loan nondischargeable under § 523(a)(2)(A). This Court categorically refuses to accept that position.

See In re Hodges , 407 B.R. 415, 418-19 & n.6 (Bankr. D. Kan. 2009).

Cf. Fed. R. Bankr. P. 7056 ; Fed. R. Civ. P. 56(f).